# Franklin Fire Insurance Company *versus* Massey.

A policy of insurance against fire, was effected by the agent of an insurance company, for the term of one year, and also for any future time or times for which a premium should be paid, and endorsed on the policy, or otherwise acknowledged in writing, by the secretary, or other authorized officer of the company for the time being; the policy was several times renewed, the premium being paid to the agent, and by him thereon endorsed; after the last renewal, the company instructed their agent to return the premium and cancel the policy; this was communicated to the insured, but the agent having no funds in his hands, did not return the premium until a loss had occurred by fire within the terms of the policy: *Held*, that the agent was a duly authorized officer of the company, empowered to bind them by a renewal of the policy, and that they were liable for the loss.

The company having received the premiums, and ratified the previous renewals of the policy, were bound by the act of their agent; in the absence of evidence that he had no such authority, and that this want of power was known to the insured.

An action of debt will lie on a policy under seal, renewed by a parol endorsement, in the name of an assignee of the party originally insured.

ERROR to the District Court of *Philadelphia.*

This was an action of debt by John P. Massey against The Franklin Fire Insurance Company of Philadelphia, on a policy of insurance against fire issued by the defendants to John Waughn,

[Franklin Fire Insurance Company *v.* Massey.]

on the 20th October 1847, and assigned to the plaintiff on the 9th January 1854.

·The policy was originally effected by John Minor, an agent of the defendants, residing at Fredericksburg, Virginia; by it the defendants insured John Waughn against loss by fire, to the extent of $3145, on his tan-house, and other buildings appurtenant thereto, and his stock of bark, leather, &c., therein contained, situate at Bowling Green, Caroline county, Virginia, "from the 13th October 1847, to the full end and term of one year, and also for the full end and term of any future time or times for which a premium of insurance shall be paid, and endorsed on this policy, or otherwise acknowledged in writing, by the secretary, or other authorized officer of the said corporation for the time being."

This policy was renewed from time to time, the payment of the premiums being made to Minor, the defendants' agent, and by him endorsed on the policy. On the 25th October 1848, the sum insured was increased to $3420. On the 9th January 1854, the policy was assigned to the plaintiff, by Waughn the insured, and approved in due form by Minor. And subsequently thereto, it was three times renewed by him, for the plaintiff, and the payment of the premiums was regularly endorsed thereon.

On the 16th February 1855, and on the 5th March in the same year, the defendants instructed their agent to confine their business to ordinary risks, and to decline all other insurances, whether new or renewed. And on the 30th October 1856, having received from him a report of the renewal of the policies of the plaintiff, and another, which they deemed extra-hazardous, they instructed him to return these parties the premiums on their insurances, and cancel the policies.

On the 1st November 1856, Minor addressed the following letter to the plaintiff :—

"Fredericksburg, Va., Nov. 1st, 1856.

"Mr. John P. Massey,
        Bowling Green, Caroline county.

"Dear Sir :—I received last night a letter from the secretary of the Franklin Fire Insurance Company of Philadelphia, in which he says that your property, insured per policy No. 77502, being on tanning establishment, and taken at one per cent., is declined. He adds :—'We have not a risk of this kind on our books at less than two and a half per cent., which we obtain without any difficulty. Every renewal is a new contract, and the company reserves the right of rejection upon returning the premium, but the property is regarded as insured during the intermediate term.' I should, therefore, send you a check for the premium,

[Franklin Fire Insurance Company *v.* Massey.]

but having a few days ago transmitted to Philadelphia all the funds in my hands, belonging to the agency, and my private stock being insufficient for the purpose, I shall have to put it off for a few days.

"Respectfully, yours,          J. Minor, *Agent.*"

On the 11th November 1856, Minor again wrote to the plaintiff, enclosing his check for the return premium, which was received on the 13th; but on the night of the 11th, the premises insured were destroyed by fire.

The plaintiff declared in debt upon his policy; and the defendants pleaded *nil debent*, and the following special plea:—

"And for a further plea in this behalf, by leave of the court, &c., the defendants say, that the plaintiff ought not, &c., because they say, that the said supposed renewal of the policy of insurance, whereof the plaintiff has above declared, was made as follows, and not otherwise: That one John Minor was the agent of the defendants at Fredericksburg, Virginia, with limited powers and authorities, among others, to receive applications for insurance and renewals thereof from persons desiring to be insured by and with the defendants, and to transmit the said applications to the said defendants for their approval or rejection, which applications, if approved by the said defendants, should be binding upon them as a contract of insurance, and a policy should be forthwith issued in accordance therewith; but if any such application should be disapproved by the said defendants, it should be of no force and effect, other than that, in the period intervening between the said application and disapproval and rejection, and the communication of such disapproval and rejection to the party so applying for insurance, the said application should be binding upon the said defendants, and the said party so applying should be insured in the said intervening period, but no further.   That the said plaintiff, well knowing the said duties and powers of the said John Minor, agent as aforesaid, and the force and effect of such applications for insurance, did, upon a certain day and year, to wit, upon the 13th day of October 1856, make application to the said agent at Fredericksburg, Virginia, for a renewal for one year of the insurance upon the premises described in the declaration, and then and there paid to the said agent the sum of $34.20, the premium demanded for such renewal of insurance; that the said agent forthwith transmitted the said application to the said defendants, for their approval or rejection, and the said defendants immediately afterwards declined and refused to renew the said insurance, and disapproved of the same, and communicated the said refusal to the said agent, which said declining and refusal and disapproval were forthwith, to wit, upon the first day of November 1856, and before the happening of the fire above declared

[Franklin Fire Insurance Company *v.* Massey.]

of, duly communicated to and received by the said plaintiff; but the said premium of $34.20 was not then returned by the said agent to the said plaintiff; for the reason, at that time given by the said agent to the said plaintiff, that the said agent had not then so much money to return. That afterwards, to wit, on the 11th day of November 1856, and before the happening of the fire above declared of; the said agent duly forwarded and transmitted, by mail, to the said plaintiff, a check or order upon a bank, payable on demand, for the amount of said premium, to wit, for the sum of $34.20, which check, so transmitted by mail, was received by the said plaintiff, after the happening of the said fire above declared of; and which said check, so transmitted and received by the said plaintiff as aforesaid, has, from thence hitherto, been retained and kept by the said plaintiff, and not by him returned to the said defendants or to their said agent, or to any one on their behalf. And this the said defendants are ready to·verify. Wherefore, they pray judgment whether the said plaintiff ought to have or maintain his aforesaid action thereof against the said defendants, &c."

To this plea the plaintiff put in a special demurrer, and assigned the following causes of demurrer : 1. That it amounted to the general issue. 2. That it was argumentative. 3. That it was double. 4. That instead of facts, the defendants had pleaded evidence. 5. That it was defective in not presenting an issue.

On the trial of the issue formed by the plea of *nil debent*, the defendants presented the following points in writing, upon which they requested the court to instruct the jury :—

1. There is no evidence of any authority conferred upon Minor to bind the company by receipt or contract of insurance in any form, except such as contained in the writings given in evidence.

2. There is no evidence that Minor had authority to bind the company by receipt or contract of or for insurance, for a longer time than until the company had a reasonable opportunity to consider and reject the application, and until notice of such rejection was given to the applicant through Minor.

3. The notice by Minor to the plaintiff on November 1st 1856, stating that the defendants declined to renew the insurance under the policy declared upon, which notice was received by the plaintiff before the fire occurred, discharges the defendants from any liability upon any contract of insurance as declared upon.

4. The notice given by Minor to the plaintiff on November 1st 1856, and duly received by him, together with the transmission of a check for the premium, in a letter mailed before the happening of the fire, discharges the defendants from any liability upon any contract of insurance as declared upon.

5. As it appears by the testimony given by the plaintiff, that the plaintiff made application to Minor for insurance upon the 13th

[Franklin Fire Insurance Company *v.* Massey.]

October 1856; that said application was communicated to the company upon October 29th 1856; that the company rejected the application upon October 30th 1856, and so advised Minor, who, upon November 1st 1856, so informed the plaintiff, and before the fire, enclosed his check to plaintiff for the amount of premium, which check plaintiff still retains; the plaintiff cannot, although the check was not received by him until after the fire, recover in the present suit.

6. The plaintiff cannot recover upon the policy in the form declared on.

In answer to the points, the court below instructed the jury as follows :—

To the first point—"I do not know of any evidence of Minor's authority, except what is contained in the writings in evidence; I do not know that Minor's testimony contains any different evidence, and I therefore affirm the point in this sense."

To the second—"This proposition is correct, with this quali-. fication, that if Minor had authority to receive premiums, there is evidence from which, in connexion with the other evidence in the cause, you may find the defendants are bound; I reserve the point. The other four points I decline answering affirmatively."

The jury found a verdict for the plaintiff for $2878.67, subject to the opinion of the court upon the point reserved. And the court below subsequently gave judgment for the plaintiff, as well upon the demurrer, as upon the reserved point; in respect to which the following opinion was delivered by HARE, J :—

"It is thoroughly well settled, that those who deal with an agent are limited by the circle of his authority, and cannot rely on the statements of the agent, or upon their own failure to ascertain the nature and extent of his powers, as a reason for charging the principal, or carrying his liability further than the authority of the agent. But it is not less true or well established, that the authority of an agent will be measured not only by his written or oral instructions, but by the acts and declarations of the principal, and consequently, by the acts and declarations of the agent, when known to and tacitly or expressly adopted by the principal. An agent entrusted with the possession of personal property, and with the powers necessary for its safe keeping, acquires no additional power by alleging that he is also armed with a power to sell; and those who buy on the faith of such an allegation, must submit to the loss if it turns out to be unfounded. But if the principal ratify one such sale, by receiving the purchase money, or in any other way, without communicating and protesting against the excess of authority, and still more, if he approve and adopt other sales of the same nature, he will lose the right to allege that the agent has not the authority, which he claims, and will be as much bound by his acts as if they were duly authorized. The policy

[Franklin Fire Insurance Company *v.* Massey.]

of insurance, in the case now before us, was made on the 15th of October 1847, for the term of one year from the period of its execution, ' and also for the full end and term of any further time or times for which a premium of insurance shall be paid and endorsed on the policy, or otherwise acknowledged in writing, by the secretary or other authorized officer of the corporation for the time being.' Endorsed on the policy, or given in the form of separate memoranda, are a series of receipts reaching as far back as October 14th 1848, and coming down regularly, through each succeeding year, to the 15th of October 1856, all acknowledging the payment of premiums in renewal of the insurance, and all signed by J. Minor, as agent for the company. The loss happened shortly after the last of these renewals, and the only question is, whether Minor was an authorized officer of the company, within the terms of the policy, and entitled to bind them by receiving the premium, for the purpose of extending the insurance for another year.

" The question thus propounded has a double aspect, and depends not only on the authority which the company actually gave, but on that which the plaintiff was justified in believing them to have given. The evidence on the former point, consists in the answers of Minor to the interrogations propounded by the defendants' counsel, and in the written documents annexed to those answers, and containing the instructions under which he acted. The answers throw but little light on the point in question, and the instructions are at the best ambiguous. The third instruction is the only one which speaks of renewals, and all that it says is, that all insurances whether new or renewed, and also all changes, or endorsements on policies, shall be reported daily. Hence an argument that all renewals were to be reported to the defendants for approval, and were not to be binding unless approved. But the document itself contains nothing about approval or disapproval; it simply requires the agent to acquaint his principals with the acts done in the course of the agency, one of the first duties of an agent, and certainly not the less incumbent upon him, when his acts are binding on the principal, than when they are voidable or merely void. From the duty of reporting renewals, no just inference can therefore be drawn against the authority of the agent to renew. On the contrary, it might be asked, if he could not renew, what occasion or necessity could arise for reporting renewals. Ambiguous language should always be construed most strongly against the party who uses it, especially when it has been the means of leading others into error ; and an insurance company, which introduces a provision into the policy, that the insurance may be renewed by its duly authorized agents, and then gives its agent a letter of instructions requiring him to report all renewals, has little right to complain, if the agent and those who deal with

[Franklin Fire Insurance Company *v.* Massey.]

him infer, that he has power to do that which he is authorized and required to report daily, if and when done. Where the language of a power is ambiguous, it should receive that interpretation which will sustain the acts of those who exercise it, although a critical consideration might show reasons for preferring a different interpretation: Very *v.* Levy, 13 *How.* 345, 359.

" But whatever doubt might exist (and I do not deny that there might be some room for doubt, if the case rested solely on the written authority given to the agent), is dispelled by turning to the acts of the agent under the authority, and the ratification which those acts have received from the conduct of the principal. When the policy was about to expire, towards the close of the first year of its existence, the plaintiff called on Minor, then, as now, acting as the agent of the defendants, and paid him the premium for renewing the policy for the ensuing year, and Minor not only accepted the premium, but endorsed it on the policy, writing his name, at the same time, under a printed acknowledgment that the policy had been renewed. A similar payment was made, and a similar acknowledgment given in each succeeding year, until the year 1856, when the renewal took place which gave rise to the present controversy. That these acts of the agent were binding if done under a previous express or implied authority, or sustained by a subsequent ratification, is beyond doubt or question; and we think there is abundant evidence both of authority and ratification implied unequivocally, and therefore not less conclusive than if expressly given.

" A principal is bound to assent to, or dissent from, the acts of his agent, within a reasonable time after they have been communicated to him by the agent; if he replies without expressing surprise or disapprobation, he may fairly be presumed to have authorized what has been done; if he lies by without replying, his assent may be presumed; if he accept or enjoy the benefit of the act, he will be precluded from repudiating it subsequently; if he sanction acts of a particular kind or nature, he cannot afterwards disaffirm other acts of the same kind: The Railroad *v.* Cowell, 4 *Casey* 329. Will it be said, that the defendants remained in ignorance of the several renewals of this policy, from the time of the first renewal, on the 10th of October 1849, down to that of the last, on the 30th October 1856? They could not have been ignorant, unless Minor committed a breach of trust by withholding the premiums and appropriating them to his own purposes; and although there is no direct evidence that he paid them over during the first four or five years, yet he is proved to have paid them in 1855 and 1856, and a letter written by their secretary, October 30th 1856, shows that the company were fully aware that the policy had remained in force down to that period, and only objected to its further continuance. As it had not on any occasion

[Franklin Fire Insurance Company *v.* Massey.]

been renewed by them, as they had not done any single act in the interval to give it fresh life and vigor, they must necessarily have known that it was renewed by their agent; and as they have given no evidence of his keeping back or misappropriating the consideration of the renewals, the fair inference is, that it was paid over when and as received, in the due course of business.

"The evidence is therefore overwhelming, that the company authorized, knew of, and ratified the renewals of the policy by Minor, and the defendants seek to escape from the only conclusion to be drawn from the evidence, by alleging, first, that although Minor had authority to effect renewals, those renewals were to be merely conditional, and to depend for their validity on the subsequent approval of the company, and next, that whatever his authority might have been originally, it was changed or limited by the letter of February 10th 1855, in which he is requested to limit his transactions on behalf of the company to ordinary risks, and reject all other insurances, whether new or renewed.    To judge correctly of the former of these allegations, we must remember that the form of renewals signed by Minor, which is set forth in the policy as originally executed by the defendants, and which may therefore be presumed to have been approved by them, contains nothing conditional, and is, on the contrary, so worded as to import an absolute and final agreement.    The policy does not say, that the insurance may be conditionally renewed by any authorized agent, subject to the approval or disapproval of the company, and to continue in force until they signify their disapprobation.    It says, that the insurance shall endure 'for the full end and term of any future time or times for which a premium shall be paid and endorsed on the policy, or otherwise acknowledged in writing, by the secretary or other authorized officer of the corporation.'

"There was nothing, therefore, in the policy to imply that a renewal, made by the payment of a premium endorsed on the policy, or acknowledged in writing by a duly authorized officer, was to be a conditional renewal; and the receipt given October 15th 1856, by Minor, makes it plain, that both he and the plaintiff understood the renewal to be absolute. ·The question, therefore, is simply whether a principal, who has said that he will be bound absolutely, if certain payments are made to any one who is duly authorized to receive them, can with propriety enjoy the benefit of a series of such payments, made to one assuming to act as his agent, and escape from liability when it suits his purpose, on the ground that if the agent was authorized at all, his authority was limited, and did not extend to an absolute contract. Notice is, for most purposes, equivalent to knowledge, and whatever puts a man on inquiry operates as notice.    A principal, who receives the consideration of a contract, made by one who assumes

to act as his agent, ought to inquire into the nature of the contract; if he fails to do so, he must submit to the consequences, and will not be allowed to treat that as conditional, which is really absolute. Moreover, the form of renewal, as set forth in the policy as originally executed by the defendants, is such as would lead the insured to suppose, that if the insurance were renewed at all, it would be renewed absolutely, and made it the duty of the insurers to inquire whether the insured was not acting on the expectations thus created, and whether he knew of the limited instructions given to Minor, if indeed, any such limitation existed. The general rule, that a principal will be bound, not only by the authority which he actually gives, but by that which he leads others to believe he has given, is too well settled to be questioned as a general principle; and was held in Perkins v. The Washington Insurance Co., 4 *Cowen* 660, to render the insurers liable, when they might otherwise have escaped from liability.

"It would seem equally plain, that the letter of February 10th 1855, was not such a revocation or restriction of the powers previously given to Minor, as would render the renewal of October 14th 1856, void or voidable. It instructs him to confine future renewals to ordinary risks, but it does not preclude the exercise of his judgment, nor deny him the power of determining what risks were ordinary and what extraordinary; no doubt, because some discretion was necessary for the effectual discharge of his functions, as an agent at a distance from his principals. Nor is there any sufficient evidence, that the risk covered by this policy, was so far extraordinary as to fall within the restriction; for although tanneries are enumerated at the close of the policy among specific risks, yet the policy itself informs us that some only of those risks involved extra hazard, while the original insurance and all the subsequent renewals, were effected at ordinary rates of premium. Nor, if the letter in question had been a revocation of the authority previously held by Minor, would it be binding on the plaintiff, in the absence of evidence that it was made known to him, or that he had in some way notice of its contents. An agent who has been endowed with a general authority, and allowed to hold himself out to third persons as expressly or impliedly authorized to represent his principal, cannot be stripped of his power subsequently by a secret act of revocation, unknown to those who continue to deal with him, in the belief that everything remains as it was previously: Morgan v. Stell, 5 *Binn.* 305; Beard v. Kirk, 11 *N. Hampshire* 398. To hold that persons who relied with reason upon the acquiescence of the defendants, during a long series of years, in the acts of Minor, could be prejudiced by a change in his instructions, not communicated to them, and which they had no means of knowing, would be contrary to one of the plainest principles of justice, which prescribes that those

[Franklin Fire Insurance Company *v*. Massey.]

who give others a right to believe that a particular state of things exists, shall be equally bound whether it exists or not. On the whole, we are of opinion that no sufficient reason has been shown for a new trial, and that judgment should be entered for the plaintiff on the point reserved."

To this opinion the defendants excepted, as they had done to the ruling on the trial; and having removed the cause to this court, they here assigned for error: 1. The refusal to charge as requested in the defendants' points. 2. The judgment on the reserved point. 3. The entry of judgment against them on the demurrer.

*G. W. Biddle* and *St. G. T. Campbell*, for the plaintiffs in error.

*McMurtrie* and *J. W. Paul*, for the defendant in error.

The opinion of the court was delivered by

READ, J.—A policy of insurance against fire was effected by John Waughn, on certain premises, situate at Bowling Green, Caroline county, Virginia, for one year, from 13th October, 1847, in the Franklin Fire Insurance Company of Philadelphia, for $3145. The policy was dated 20th October 1847, and contained a provision that it should have no force or effect "if assigned, unless such assignment be made within thirty days after the transfer of the property, and allowed by the company agreeably to Article XI. of the proposals annexed," which is in these words: "XI. The policy may always be transferred, provided such transfer be endorsed upon the policy, and brought to the office for approval, within thirty days from the date thereof; otherwise the premium shall be considered as sunk, for the benefit of the assurers." By Article VII., "all persons desirous of continuing their insurances may do so, by a timely payment of the *premium only*, without being subject to any charge for the policy.'

The policy was "to the full end and term of one year, and also for the full end and term of any future time or times for which a premium of insurance shall be paid and endorsed on this policy, or otherwise acknowledged in writing by the secretary, or other authorized officer of the said corporation, for the time being;" and it was agreed "that this policy shall expire at twelve o'clock, at noon, on the thirteenth day of October, in the year one thousand eight hundred and forty-eight, unless continued by endorsement or acknowledgment as aforesaid, and then at the time shall expire, according to the tenor of the said endorsement or acknowledgment."

The premiums for continuing the insurance by this policy were regularly paid to John Minor, the agent of the defendants below,

[Franklin Fire Insurance Company *v.* Massey.]

at Fredericksburg, Virginia, and were regularly endorsed or acknowledged by him. On the 25th October 1848, an additional insurance of $275 was made, and the premium $2.75 paid to and acknowledged by Mr. Minor.

On the 9th January 1854, the policy was assigned by John Waughn to John P. Massey, the plaintiff below, and approved in due form by the agent of the company, John Minor. After this transfer, thus allowed, three premiums were received for its continuance, by the agent, and transmitted to and received by the parent office at Philadelphia. One was received on the 12th October 1854, one in 1855, and the last on the 14th October 1856, and all were duly acknowledged in writing by their agent.

A loss by fire occurred on the night of the 11th November 1856, and about it or its amount there was no dispute. By the payment of the last premium, the policy was continued for one year from the 13th October 1856, and of course covered this loss. From the course of business, and from necessity, the agent at Fredericksburg was clearly an authorized officer of the said corporation, for the time being, with power to receive premiums for continuances, and, by his acknowledgment in writing, to bind the company for another year. It, therefore, lies on the company to show that this agent had no such power, and that such want of power was communicated to, or known by the plaintiff below.

All the previous acts of Mr. Minor had received the approval of the company, and we can see nothing in the evidence which was in any way likely to put the holder of the policy upon inquiry, as to the nature and extent of his authority.

On the 16th February 1855, after the transfer of the policy to Mr. Massey, and the receipt of the first premium from him as assignee, the secretary of the company wrote a letter to Mr. Minor on the subject of extra hazardous risks, and enclosed a printed set of instructions, and on the 5th March another letter of similar tenor. Neither of these letters were exhibited to Mr. Massey, and the printed instructions, which were not followed by the agent in some important matters, if shown to him, contained nothing affecting his standing in this case. By the II. Instruction, "all insurances, whether new or renewed, also all changes or endorsements on policies to be reported daily." This was never followed. Under the XI. Instruction, about monthly accounts, Mr. Minor, at the close of October 1856, sent his October account, containing the premium received by him for its renewal on the 14th of the same month.

In the letter of reply of the secretary, of the 30th October, speaking of this and another policy, he says: "We have to request that you return these parties the premiums on their insurances, and cancel the policies." On the 1st November, Mr. Minor writes to Mr. Massey, saying that he had received a letter

[Franklin Fire Insurance Company *v.* Massey.]

from the secretary, and that his insurance is declined; and quoting from it, he says: " Every renewal is a new contract, and the company reserves the right of rejection, upon returning the premiums; but the property is regarded as insured during the intermediate term."

" I should, therefore," says Mr. Minor, " send you a check for the premium, but having a few days ago transmitted to Philadelphia all the funds in my hands, belonging to the agency, and my private stock being insufficient for the purpose, I shall have to put it off for a few days."

On the 11th November, Mr. Minor wrote, from Fredericksburg, a letter to Mr. Massey, at Bowling Green, enclosing his check for the premium, $34.20, which could not reach, by course of mail, its destination, before the 13th November, at 2 o'clock, P. M.

It is clear, therefore, on their own construction of their contract, the property remained insured until the 13th November; and as the fire happened on the night of the 11th, or the morning of the 12th, the company are, of course, liable for the loss.

The form of action was right, and we see no error in the rulings of the court below, or in their decision upon the demurrer.

Upon the simple facts of this case, we cannot see that there was any real ground to dispute the liability of the company, and in all such instances, it is the true interest of the insurers to pay, without the costs and trouble of a law suit. In England, in a kindred branch of assurance, " the Equitable boasts that it has never, but in two instances, disputed a claim, out of its numerous and vast engagements." This is remarkable for a society that has paid away, in all forms, twenty-nine millions sterling.

Judgment affirmed.